Lewis, J.
delivered the opinion of the court. That common carriers are, by the general law on that subject, bound to deliver goods according to their engagements, is not to be disputed. The questions which arise here are, whether the defendant has not complied with the spirit of his engagement ; whether he is liable for accidental mistakes; and whether he is answerable for the mistake of Allen. Here the plaintiff thought proper to make a consignee of a transient person, having neither residence nor agent at Norfolk, and sailing in a different vessel from the one which carried his goods. The defendant disposed of the goods according to the usage of that particular trade, and the custom of merchants, by sending them from City Point to Norfolk, to a person there established, against whose respectability nothing is alleged, to be delivered to the consignee. This person, through mistake, delivered them to a different person.
*The case of Golden v. Manning Peyton, (3 Wils. 439,) cited by the plaintiff’s counsel, is much stronger for the defendant than against him. The decision is not on the general law, but on the particular circumstances of the case. The masters of the stage coach took a greater price than other carriers, and were in the constant practice of keeping a porter to carry goods which arrived in the coach, to the place of their destination ; the goods were also to be delivered at the house of Ireland, in Princess street. The court thought these circumstances sufficient to authorize them to consider this a special undertaking to deliver the goods at the house of Ireland, by their porter. But for the circumstance of their keeping a porter to carry out goods that arrived in the coach, it would have sufficed to have lodged them in the stage-house, sending timely notice to Ire *373 land; and had he been a transient person, having no known place of residence, this ceremony could certainly not have been required of them, (a)
The case of Seyds v. Hay, (4 T. R. 260,) also cited by the plaintiff, is still stronger for the defendant. Here also the decision was not on the general law, but on the special direction of the plaintiff not to deliver the goods to the wharfinger, and the special engagement of the defendant not to do so. The court therefore say, it was a deliberate act, and not a misdelivery, merely owing to mistake. From whence may be inferred, that had' it been so, the defendant would have been discharged. Justice Buller also observes, that had the goods been delivered to the wharfinger, for the wharfage duty, according to usage, it would have been an answer to the plaintiff’s action ; but no such usage was proved.
We are of opinion, under the circumstances of the case at bar, that the defendant is not answerable for the mistakes of Allen, should mistake in any case render *him liable for a misdelivery. Najah Taylor being *374 a transient person, and it being unknown where to look for him, facts, we are to presume, known to the plaintiff, the defendant was obliged to deliver them to a third person, and he was only bound to see that such person was a responsible character; and, on such delivery, the bailee must be considered the agent for the plaintiff. It would undoubtedly be otherwise had Taylor been a resident at Norfolk, or had had an agent there.
We are of opinion, that the plaintiff take nothing by his motion.
Rule refused.(b)(c)

(a) The ease of Golden v. Manning & Peyton is also reported In 2 Wm. Blacks. 916, where the opinions are stated in these terms : — “ By Gould, Justice, (absente, De Grey, Chief Justice.) There is no occasion to enter, as has been done at the bar, into the general question of the duty of common carriers ; though it is held in Owen, 57, that all carriers are hound to deliver as well as carry the goods. But this case depends on its own special circumstances. The defendants certainly must be understood to have contracted to carry these goods on the same terms and in the same manner that they carried other people’s. And it appears that their general course of trade was to deliver goods at the houses to which they were directed ; that they received a premium, and kept a servant for that special purpose. This box came directed to their warehouse at Birmingham. That the direction was after-wards defaced was owing to their own neglect. They had Ireland’s name in their way-bill, and might have found him out by their directory. Therefore here is a gross and palpable negligence on the part of the defendants; who, whether bound to deliver or not by the general duty of carriers, had undertaken so to do by their general course of trade ; and indeed I think that all carriers are bound to give notice of the arrival of goods, to the persons to whom they are consigned, whether bound to deliver or not.
“ Blackstone and Nares, Justices, of the same opinion on the circumstances of this case, but avoided entering into the general question.”

(b) [Old note.] See Abbott on Shipp. 3d ed. 247, c. 3, s. 12. 2 Esp. N. P. Cas. 613. Northey and others v. Field.

(c) It has never been expressly decided that it is the duty of a carrier, independently of any special contract between the parties or any local usage of the trade, to deliver goods at the houses of the persons to whom they are directed. The question was considered in Hyde v. The Trent and Mersey Nav. Co. (5 Term Rep. 389,) though the case was decided upon another ground, and the judges differed in opinion. Lord Kenyon reasoned as follows: — “If the defendants here be liable, consider how far the liability of carriers will be extended ; it will affect the owners of ships bringing goods from foreign countries to merchants in London; are they bound to carry the goods to the warehouses of the merchants here, or will they not have discharged their duty on landing them at the wharf to which, they generally come 1 It would be strange indeed if the owners of a West Indiaman were held liable for any accident that happened to goods brought by them to England after having landed them at their usual wharf. The instance of game, which has been mentioned at the bar,* shows the general sense and understanding of the public on this subject. The different claims of the respective persons concerned are separately mark *374-1 ed on the direction. The carrier, who receives a certain sum for carrying the game, is not bound, in consideration of that sum, to deliver the goods ; he has performed his duty when he has brought the game to the inn where he puts up; then the business of the porter begins. I am not aware that it has ever been decided that it is the duty of the carrier to deliver such goods at the house of every individual person to whom they are directed ; if it has, the action brought by Mr. Price against the keeper of the Bell Inn was misconceived ; it should have been brought against the carrier, and not the inn-keeper ; and yet it did not occur to the defendant’s counsel in that case to make such an objection. When goods are sent by a coach, a letter of advice should also be sent to the person to whom they are directed, that he may send for them ; or the price which the porter expects to receive for delivering them will induce such porter to carry them; but the carriage and porterage constitute distinct charges.”
Justices Ashhurst, Buller and Grose inclined to a different opinion ; and Justice Ashhurst thus states his view of the question: — “The inclination of my opinion on the general question is, that a carrier is bound to deliver the goods to the person to whom they are directed. A contrary decision would be highly inconvenient, and would open a door to fraud; for if the liability of the carrier were to cease when he had brought the goods to any inn where he might choose to put his coach, and a parcel containing plate or jewels brought by him were lost before it was delivered to the owner, the latter would only have a remedy against a common porter. It has been said, however, that it is the practice of many persons to send to the inn for their goods; but that does not prove that the carrier is not bound to deliver them, if they do not send. If the owner choose to send for his goods, that merely discharges the carrier from his liability in that case ; it only dispenses with the general obligation thrown by the law upon the carrier; but it does not apply to other cases where that obligation is not dispensed with. But on this question I do not mean to give any decided opinion.”
AVithout examining the dicta in detail, it may be generally stated that the strong inclination of the English courts has been to maintain the opinion of the three judges against that of Lord Kenyon. (See, per Wood, Baron, in Bodenham v. Bennett, 4 Price Ex. 34, cited by Dallas, Ch. J. in Duff v. Budd, 3 Brod. & Bing. 182; per Bailey, J. in Garnett v. Willan, 5 Barn. &. Ald. 58 ; per Hullock, B. in Storr v. Crowley, 1 M’Clel. & Y. 129, 138. See also Duff v. Budd, 3 Brod. & Bing. 177; 6 Moore, 469. Birkett v. Willan, 2 Barnwell & Ald. 356. Stephenson v. Hart, 1 Moore & Payne, 357 ; 4 Bingham, 476. Smith v. Horne, 8 Taunt. 144. Wardell v. Mourillyan, 2 Esp. N. P. C. 693.)
The same inclination exists in the American courts. In Gibson v. Culver, (17 Wend. 305, 306,) Mr. Justice Cowen remarks, that “ it is indeed extremely well settled, that prima facie the carrier is under an obligation to deliver the goods to the consignee personally;” and the remark is cited with approbation by Jewett, J. in Fish v Newton, (1 Denio, 47.) (See also Bingham v. Rogers, 6 Watts & Serg. 495. Bonney v. The Huntress, cit. 2 Kent Comm, ed. 1844, p. 604.) Chancellor Kent has also given the weight of his authority *374-2 to this view of the question, (3 Kent Comm. ed. 1844, p. 604,) upon the authority of Smith v. Horn, Bodenham v. Bennett, Garnett v. Willan, Duff v. Budd, Bonney v. The Huntress, and Gibson v. Culver. Mr. Justice Story, however, treats the question as one not yet decided. (Story on Bailments, ed. 1840, § 543. See also Abbott on Shipping, Am. ed. 1846, pp. 462, 463.)
On the other hand, Chickering v. Fowler, (4 Pickering, 371,) must be regarded as according with the opinion óf Lord Kenyon, in Hyde v. The Trent and Mersey Navigation Co. Fox v. Blossom, Packard v. Bordier, (cited 2 Kent Comm. ed. 1844, p. 605, n. (d,)) and Cope v. Cordova, (1 Rawle, 203,) are to be regarded as going upon the ground of understanding or usage, and therefore inapplicable to the abstract question. (See also Pickett v. Downer, 4 Vermont, 21.)
It must be very rarely, if at' all, that the question presented can arise, for in almost every case either the carriage is under a special contract or in accordance with a usage of the trade; either of which will of course govern upon well settled principles of law and justice.
Let us now briefly examine some of those eases which are referable to usage.
It is the duty of carriers to take charge of the baggage of passengers, and see it safely delivered to them at the end of the journey ; (Cole v. Goodwin & Story, 19 Wendell, 251; Powell v. Myers, 26 Wendell, 591 ;) or if the owner is not present to receive his baggage, or does not send for it, according to the usage, to store it.
The usage of express agents is understood to be to deliver parcels at the place to which they are directed, if it be upon the line, or at either of the termini of their route, and this, as we have seen, would govern. On the contrary, the usage is understood to be where goods are brought from beyond sea, or heavy goods from places in this country, to deliver them at the warehouse of the carrier. In such a case as this, and indeed in every case where the carrier is not obliged to make delivery to the consignee, he must give notice that the goods have arrived. (Story on Bailments, ed. 1846, §§ 543, 544. Fox v. Blossom; Cope v. Cordova ; Pickett v. Downer ; Packard v. Bordier ; Gibson v. Culver ; Fisk v. Newton ; ut sup. Gatliffe v. Bourn, 4 Bingham, 314. 3 Manning & Granger, 642. See Granger v. Dacre, 12 Mees. & Wels. 431. Upon this subject, Mr. Justice Story observes, (Story on Bailments, ed. 1846, 4 545,) “ In America, the rule adopted in regard to foreign voyages, although it Iras been matter of some controversy, seems to be, that in sueli eases, the carrier is not bound to make a personal delivery of the goods to the consignee ; but it will be sufficient, that he lands them at the usual wharf or proper place of landing, and gives due and reasonable notice thereof to the consignee. (2 Kent Comm. lect. 40, pp. 604, C05, and note (c,) 4th ed.) The latter is, under such .circumstances, after such notice, bound to provide suitable persons to take care of the same, and to carry them away. (Chickering v. Fowler, 4 Pick. 371. Cope v. Cordova, 1 Rawle, 203. Kohn v. Packard, 3 Miller Louis. Rep. 225.) The general usage seems also to be in conformity to this rule. But it is of the very essence of the rule, that due and reasonable notice should be given to the consignee, before or at the time of the landing, *374-3 and that he should have a fair opportunity of providing suitable means to take care of the goods, and to carry them away. (Ostrander v. Brown, 15 Johns. R. 3.9. Kohn v. Packard, 3 Miller Louis. R. 225. Pickett v. Downer, 4 Vermont Rep. 21. Gatliffe v. Bourn, 4 Bing. New Cas. 314, 330, 331, 332.) And, the carrier'does not, by sending the goods to the consignee by a ear-man, without the orders of the consignee, discharge himself from responsibility, even though it is a common practice. (Ostrander v. Brown, 15 Johns. R. 39. 2 Kent Comm. lect. 40, p. 604, 605, and note, 4th ed.) If the consignee is unable, or refuses to receive the goods, the carrier is not at liberty to leave them on the wharf; but it is his duty to take care of them for the owner. (2 Kent Comm. lect. 40, p. 604, 605, and note, 4th ed. Mayell v. Potter, 2 Johns. Cas. 371. Stephenson v. Hart, 4 Bing 476. Chickering v. Fowler, 4 Pick. 371. Cope v. Cordova, 1 Rawle, 203.”)
It is competent, however, to a carrier to prove that the uniform usage and course of the business in which he is engaged, is to leave goods at his usual stopping places in the towns to which the goods are directed, without notice to the consignees ; and if such usage be shown of so long continuance, uniformity and notoriety, as to justify a jury to find that it was known to the plaintiff, the carrier will be discharged. (Gibson v. Culver & Brown, 17 Wend. 305.)
The case has arisen where the owner of the property was not known, and could not, after reasonable efforts, be found, and it was there held that the carrier may discharge himself from further responsibility, by placing the goods in store with some responsible third person in that business, at that place, for and on account of the owner. In such a case, the storehouse keeper becomes the agent or bailee of the owner of the property. And it was accordingly held, where the consignee of certain kegs of butter sent from Albany to New York by a freight barge was a clerk, having no place of business of his own, and whose name was not in the city directory, and who was not known to the carrier, and after reasonable inquiries by the carrier’s agent could not be found, that the carrier discharged himself from further responsibility, by depositing the property with a storehouse keeper then in good credit for the owner, and taking his receipt for the same, according to the usual course of business in that trade, though the butter was subsequently sold by the storehouse keeper, and the proceeds lost to the owner by his failure. (Fisk v. Newton, 1 Denio, 45.) See further, upon the subject of this note, per Abbott, Ch. J. in Birkett v. Willan, 2 Barn. & Ald. 358, commented on by Bailey, J. in Garnett v. Willan, 5 Barn. & Ald. 58. Jones on Bailment, Am. ed. 1828, 105, i.)

 Messrs. Beareroft and Lane, arg. contended, that “ it never was understood that a carrier who undertook to convey goods to London was charged with the delivery of every particular parcel to the respective owners at their houses. It is in common experience to make a separate charge for the porterage from the inn where the carrier puts up ; and persons who have advice of the arrival of goods frequently send their own servants to the inn for that purpose. The owner of the goods, therefore, enters into two distinct contracts, tlie one with the carrier, the other with the inn-keeper or porter. And on this ground must have proceeded an action, which was tried not along ago at the Sittings, brought by Mr. Price against the keeper of the Bell Inn. It was an action of trover for a turkey ; and it beiug proved that the porter who brought it to Mr. Price’s house demanded more than he was entitled to for porterage, and refused to deliver the turkey without such a payment, the plaintiff recovered a verdict; but if the plaintiff’s argument be right iu this ease, that action should have been brought against the carrier and not against the inn-keeper.”